UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Melissa Addison, | ) | C/A No. 3:17-cv-00540-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Sumter County Sheriff's Office, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |

This matter is before the Court on Defendant's Motion for Summary Judgment. ECF No. 20. Plaintiff filed a Response in Opposition, and Defendant filed a Reply. ECF Nos. 36–38, 40. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On May 2, 2018, the Magistrate Judge issued a Report recommending that the Motion for Summary Judgment be granted. ECF No. 48. Plaintiff filed objections to the Report, and Defendant filed a Reply. ECF Nos. 50, 51. On July 13, 2018, there was a hearing before the Court on the Motion for Summary Judgment and the objections. ECF No. 54.

## LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or

modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## BACKGROUND

Plaintiff makes several objections to the Magistrate Judge's recitation of the facts in this case. The Court will provide its own factual recitation and finds these objections are moot. The following allegations are taken from Plaintiff's Complaint with occasional reference to other documents. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e et seq ("Title VII"), and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"). ECF No. 1-1 at 2. Plaintiff, a black female, was employed by Defendant from January 13, 1997, until January 3, 2017. *Id*. at 3. Plaintiff received promotions throughout her employment and ended her career with Defendant as a lieutenant. *Id*.

Plaintiff was encouraged to apply for and then was selected for the lieutenant position in the Criminal Investigation Division ("CID"), effective early 2015. ECF No. 20-5 at 56–62. Plaintiff was given a written reprimand by Captain Robert B. Burnish, a white male, on June 15, 2015, and Plaintiff submitted a rebuttal. ECF No. 1-1 at 2. On June 23,

2015, Captain Burnish told Sheriff Anthony Dennis, a black male, that he was concerned about Plaintiff's "excessive absenteeism"; Plaintiff contends that she was using more sick leave because her health declined as a result of the hostile work environment. ECF Nos. 1-1 at 3–4; 20-6 at 2; 20-2 at 34. On June 25, 2015, Sheriff Dennis stated that he did not concur with Captain Burnish's June 15, 2015, reprimand; shortly thereafter, Chief Deputy Hampton G. Gardner issued Plaintiff a second written reprimand for substandard work. ECF no. 1-1 at 4. Plaintiff submitted a rebuttal to the new reprimand with supporting documentation. *Id*. Without change to her pay or rank, Plaintiff was reassigned to the Professional Standards Division as a grant writer. *Id*. Plaintiff's keys were taken, she was asked to clean out her office, and was told that she could not move her belongings into her new office until Lieutenant Monahan moved out of the office *Id*. at 5. Plaintiff was not trained for the grant writing position, which she felt was designed to set her up to fail. *Id*. In September 2015, Plaintiff was told that she would no longer be allowed to wear plain-clothes and would need to wear a uniform. *Id*. While on sick leave, Captain Burnish told Plaintiff that Sheriff Dennis wanted her to report for duty. *Id*. at 6. Plaintiff responded that she was on sick leave, and Captain Burnish told her that Sheriff Dennis wanted her to report anyway. *Id*. Plaintiff then called Captain James Turner who told her that she did not need to report. *Id*.

Plaintiff was called into a meeting with Sheriff Dennis, Chief Gardner, and Major Dailey, and was told that Sheriff Dennis still needed her to work some CID cases even though she had been moved out of that department. *Id*. at 7. Plaintiff asserts that she was

subjected to ongoing harassment and targeting including being regularly singled out at meetings for behavior that others were not singled out for, having Major Dailey attempt to trade her unmarked car for a marked car, and being told by Major Dailey that Sheriff Dennis wanted to inform her that she would be made an example of if she missed a commanders' meeting. *Id.* Plaintiff was moved into the grant writing office shortly before Thanksgiving 2015. *Id.* at 8. Plaintiff contends that Sheriff Dennis yelled at her when she presented the same grant proposal that Lieutenant Monahan had previously submitted without objection. *Id.* Plaintiff contends that on February 2, 2016, Major Dailey told her that he was going to search her office for a tape recorder. Plaintiff told him that she did not have a recorder, a search was performed, and no tape recorder was found. *Id.*

On May 13, 2016, Plaintiff submitted a Charge of Discrimination ("Charge") alleging sex and race discrimination and retaliation to the Equal Employment Opportunity Commission ("EEOC"). She also filed a complaint with the South Carolina Human Affairs Commission. *Id.* at 9. Plaintiff was suspended for three days in August 2016 for insubordination toward Sheriff Dennis when she responded to accusations that she was intentionally avoiding working at the Sumter County Fair that she believed were untrue. *Id.* at 10. She submitted a rebuttal and grieved the suspension. *Id.* In a letter dated December 28, 2016, Sheriff Dennis informed Plaintiff that he was not renewing her appointment when his new term as Sheriff of Sumter County commenced on January 3, 2017. *Id.* at 11. Plaintiff asserts that upon her termination and receipt of her personnel file, she found that her salary had not been appropriately increased in accordance with her

4

education and promotions.  *Id*.

## DISCUSSION

The Magistrate Judge provides a thorough recitation of the summary judgment standard in her Report which the Court incorporates by reference.  As stated above, the Magistrate Judge recommends that summary judgment be granted in favor of Defendant.  Plaintiff objects to each of the Magistrate Judge's conclusions.  In its review of this matter, the Court, as it must, construes the evidence in the light most favorable to Plaintiff, as the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### *Discrimination*

#### *Disparate Treatment*

The Magistrate Judge found that Plaintiff failed to establish the third and fourth prongs to make a prima facie case that she suffered disparate treatment as a result of discrimination based on race or sex.  ECF No. 48 at 6–9.  The Magistrate Judge found that Plaintiff could not establish that she was meeting Sheriff Dennis's expectations as a supervisor and that neither party provided any evidence with respect to whether Plaintiff's position was still open or who had filled it.  *Id*.

In her objections, Plaintiff argues that she has sufficiently established a prima facie case for disparate treatment based on her termination.  ECF No. 50 at 16–18.  Plaintiff contends that she was meeting Sheriff Dennis's expectations at the time of her termination and that Sheriff Dennis formed an unlawful opinion of her based on reports from individuals who took issue with Plaintiff's promotion because she was a black female.  *Id*.  The Court

disagrees.

A Title VII disparate treatment claim is analyzed under the burden-shifting framework adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination. 411 U.S. at 802. If the plaintiff provides credible evidence of a prima facie case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for its employment decision. *Id*. The plaintiff must then show by a preponderance of the evidence that the defendant's proffered reason is a pretext for discrimination. *Texas Dep't of Cty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Generally, the elements of a prima facie case of discriminatory disparate treatment are: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) different treatment from similarly situated employees outside of the protected class. *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). When the alleged adverse action is a discharge from employment, the *prima facie* case generally requires the plaintiff to establish: (1) she is a member of a protected class; (2) she was discharged; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time she was discharged; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *See Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*)).

6

Here, it is undisputed that Plaintiff is a member of a protected class and that she was discharged. With respect to the third prong, the Court agrees with the Magistrate Judge that Plaintiff has failed to establish that she was meeting all of Sheriff Dennis's expectations at the time of her termination. In his deposition testimony, Sheriff Dennis states that one reason he lost confidence in Plaintiff was that he heard from Sergeant Mays and Sergeant Wayne Dubose that she was making derogatory remarks about her co-workers and that several women in CID had reported that they were uncomfortable working with Plaintiff. ECF No. 20-2 at 6–7. Defendant has provided the sworn affidavits of several employees who averred that Plaintiff was belittling and unprofessional as a lieutenant with CID, including statements from Darlene Dellinger, Onesha Washington, and Gloria Smith, who identify themselves as black females. ECF No. 20-4 at 8–9, 16–17, 20–21; *see also Demesme v. Montgomery Cty. Gov't*, 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), 208 F.3d 208 (4th Cir. 2000) (per curiam); *Coggins v. Gov't of District of Columbia*, 1999 WL 94655, at *4 (4th Cir. 1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."). Dellinger and Washington further stated that they reported their concerns to Captain Burnish. *Id.* at 8–9, 16–17. Tomekia Deas, a records supervisor clerk in the Citizen Assistance Unit who also identifies herself as a black female, stated that she reported concerns expressed to her by others regarding Plaintiff directly to Sheriff Dennis. *Id.* at 22–23. Accordingly, the Court finds that

the Magistrate Judge correctly found that Plaintiff fails to establish that she was meeting Sheriff Dennis's legitimate expectations at the time of her termination. *See Jones v. Yonkers Pub. Schs.*, 326 F. Supp. 2d 536, 544 (S.D.N.Y. 2004) ("[G]etting along with one's co-workers is an essential component of satisfactory job performance . . . .").

*Disparate Discipline*

The Magistrate Judge found that Plaintiff failed to identify a sufficiently similar employee outside her protected class who engaged in similar prohibited conduct and received less severe disciplinary actions. ECF No. 48 at 9–11. The Magistrate Judge found that Captain Burnish and Sergeant Dubose held different ranks from Plaintiff and they were also warned by Sheriff Dennis regarding the disharmonious environment in CID. *Id*. Further, the Magistrate Judge determined that Defendant presented evidence that Sheriff Dennis suspended a black male for insubordination and failed to renew the appointment of a male deputy in whom he had lost confidence. *Id*. The Magistrate Judge noted that Plaintiff failed to identify any other employee that Sheriff Dennis viewed as being difficult to work with, who called co-workers unprofessional names, who failed to report to multiple emergency situations, and who was insubordinate to the Sheriff that was treated less harshly than Plaintiff. *Id*.

On the other hand, Plaintiff argues that she has identified sufficient comparators for her disparate discipline claim. ECF No. 50 at 20–21. Plaintiff asserts that the Report fails to explain why Lieutenant Monahan, a white male, is not an appropriate comparator. Plaintiff contends that he and Plaintiff were both lieutenants, that he failed to train her in

the grant writing position, and that he was reprimanded but continued employment with Defendant and is now in Plaintiff's former position as the Lieutenant of CID. *Id*. Plaintiff contends that there is evidence that Sergeant Mays,[1] a white male, was promoted to Lieutenant of CID after Plaintiff's termination. *Id*. Finally, Plaintiff argues that Captain Burnish and Sergeant Dubose are appropriate comparators despite their different rank because they were all supervisors, they were placed on extended probation at the same time, and all three were attributed with the issues occurring in CID. The Court disagrees.

As discussed by the Magistrate Judge, Plaintiff has failed to identify another employee, including Lieutenant Monahan, Captain Burnish, and Sergeant Dubose, who engaged in the same conduct and were treated differently. With respect to Plaintiff's removal from CID, as discussed in the Report, any claim based on the discrete act of reassignment is time barred and may only be used as background evidence or in support of a continuing hostile work environment claim. Moreover, while Plaintiff has pointed out some similarities between herself and Lieutenant Monahan, Captain Burnish, and Sergeant Dubose, she fails to account for significant differences. None of these employees were determined by the Sheriff to be insubordinate. Further, while Plaintiff, Captain Burnish, and Sergeant Dubose were all put on probation as a result of the tense working environment in CID, Plaintiff has provided no evidence that Captain Burnish or Sergeant Dubose responded by submitting a written rebuttal referring to her co-workers as liars, bullies, and

---

[1]Plaintiff identifies Sergeant Mays in her objection pertaining to disparate discipline but fails to make any allegations regarding similar conduct for which he was punished less severely.

criminals or that anyone continued to complain about their behavior toward co-workers. *See* ECF Nos. 20-8 at 10 (memorandum from Sheriff Dennis confirming receipt of her rebuttal); 20-4 at 22–23 (affirmation of Tomeika Deas wherein she states that Gloria Smith and Lynn Fanning complained about Plaintiff's behavior once she was transferred to the Professional Standards Division, which Deas reported to Sheriff Dennis).

### *Hostile Work Environment*

The Magistrate Judge found that Plaintiff's claim for a hostile work environment stems from several incidents. ECF No. 48 at 12–13. However, the Magistrate Judge determined that Plaintiff failed to provide any evidence that the alleged hostility was due to her race, gender, or any protected activity. *Id*.

Plaintiff objects to this finding and provides one and half pages worth of citations that she states offer support of her argument. ECF No. 50 at 19–20. Plaintiff does not elaborate on her argument.

To the extent that this can be considered a specific objection that requires de novo review, the Court finds that it should be overruled. To state a hostile work environment claim, a plaintiff must show that (1) she experienced unwelcome harassment; (2) the harassment was based on her race or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Baqir v. Principi*, 434 F.3d 733 745–46 (4th Cir. 2006). With regard to causation, she must show that race or gender was the "but for" cause of the harassment. *See Causey v. Balog*, 162

F.3d 795, 801 (4th Cir. 1998) (Title VII & ADEA).  Plaintiff has offered no evidence that any

purported hostility was based on race or sex.  As stated by the Magistrate Judge, Plaintiff's

conclusory allegations that she was being subjected to a hostile work environment because

of her sex or race without more is insufficient to preclude summary judgment.  *See Ross*

*v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*,

490 U.S. 228 (1989) (holding that conclusory allegations, without more, are insufficient to

preclude granting the summary judgment motion).

### *Retaliation*

The Magistrate Judge found that Plaintiff failed to establish a prima facie case for

retaliation under Title VII because she could not establish the requisite temporal proximity

sufficient to create a causal connection between the protected activity and the adverse

action.  ECF No. 48 at 14–17.  In her objections, Plaintiff contends that she has provided

sufficient evidence to establish a prima facie case of retaliation in violation of Title VII.  ECF

No. 50 at 2.

Title VII makes it unlawful for an employer to retaliate against an employee for

engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). Claims of

retaliation are also generally analyzed under the *McDonnell Douglas* burden-shifting

framework.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000).  The

requisite elements for a *prima facie* case of retaliation typically include: (1) the employee

engaged in a protected activity; (2) the employer acted adversely against her; and (3) there

was a causal connection between the protected activity and the asserted adverse action.

*Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Moreover, "[r]etaliation claims under Title VII can be based on an employer's retaliatory creation of a hostile work environment." *Fordyce v. Prince George's Cty.*, 43 F. Supp. 3d 537, 552 (D. Md. 2014) (citing *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)). However, a plaintiff "must show a *prima facie* case for retaliation, including evidence that her employer's adverse actions amount to a hostile work environment." *Id*.

To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action "'*because* the plaintiff engaged in a protected activity.'" *Holland*, 487 F.3d at 218 (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoake Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). Further, a plaintiff must show that but for the protected activity, she would not have experienced the alleged adverse act. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 362 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation," which means "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

To demonstrate causation, a plaintiff must also show that the employer was aware of the protected activity. *See Shield v. Fed. Express Corp.*, 120 F. App'x 956, 962 (4th Cir. 2005) (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)). In certain

12

circumstances, temporal proximity between the protected activity and the adverse action can be probative of a causal connection. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and holding a twenty-month period to be insufficient).

_Protected Activity_

As an initial matter, it is undisputed that Plaintiff's EEOC Charge is protected activity. Plaintiff contends that she engaged in protected activity throughout her time as a lieutenant when she reported race and sex discrimination as well as the hostile work environment to her superiors. ECF No. 50 at 3. In support of her assertion, Plaintiff cites to portions of Sheriff Dennis's deposition wherein he states that Plaintiff told him she was concerned Sergeant Dubose was undermining her, that she thought the investigators were talking about her, that she believed Lieutenant Monahan was sabotaging her, that he may have been informed of her EEOC Charge in late spring or early summer of 2016, that Plaintiff had informed him that she believed she was being subjected to a hostile work environment in her rebuttal letter, and that everyone did not want her to be a lieutenant. ECF Nos. 36-3 at 26–30, 38, 84–88, 95; 51-1 at 1–2. Plaintiff also cites to a portion of Chief Gardner's deposition in which he states that Plaintiff indicated a hostile work environment in her rebuttal letter. ECF No. 37-4 at 58–61.

The Court agrees with Defendant and the Magistrate Judge that any

communications that Plaintiff had with the Sheriff or any other supervisor prior to her EEOC Charge do not constitute protected activity. It does not appear from the deposition testimony that Plaintiff informed anyone that she felt she was being discriminated against on the basis of race or sex. To the extent that Plaintiff alleges that it should have been apparent that she was complaining or race or sex discrimination because she complained about the behavior of Sergeant Dubose, the evidence in the record is insufficient to support this assertion. Accordingly, the only protected activity to be considered is Plaintiff's EEOC Charge.

*Adverse Action*

Based on this Court's finding that Plaintiff's only protected activity at issue is the filing of her EEOC Charge in early May 2016, the adverse employment actions to be considered are her three-day suspension beginning on August 9, 2016, and non-renewal of her appointment of which she received notice on December 28, 2016, and took effect on January 3, 2017.[2]

---

[2]In her objections, Plaintiff generally cites to 152 pages in the record apparently for the proposition that she experienced more adverse employment actions than the suspension and termination. ECF No. 50 at 5 (citing ECF Nos. 36-1 and 36-2). To establish an adverse action with respect to a retaliation claim, a plaintiff must show that the adverse action was objectively material. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In *Burlington*, the Supreme Court clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington*, 548 U.S. at 64. However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. at 67. Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from

14

*Causal Connection*

The Magistrate Judge found that the time between Plaintiff's protected activity and the adverse employment actions was not sufficiently close to create an inference of a causal connection between them. ECF No. 48 at 15–17. The Magistrate Judge further found that Plaintiff had produced no evidence reasonably suggesting that retaliatory animus was the "but for" cause of any adverse employment action. *Id*.

Plaintiff objects to the Magistrate Judge's findings with respect to causation. ECF No. 50 at 4–14. First, Plaintiff states that causation is proven by temporal proximity between Plaintiff's protected activities and the adverse employment actions. *Id*. at 4–6. She contends that she was demoted from CID on the same day that Sheriff Dennis confirmed receipt of her rebuttal in which she referenced a hostile work environment in June 2015. *Id*. Plaintiff also references a sequence of events between June 2015 and the non-renewal of her employment that she alleges corroborate a close temporal proximity between protected activity and adverse employment actions. *Id*.

Plaintiff next objects to the Report's finding that Plaintiff's reports of hostility were insufficient to put Defendant on notice that the treatment Plaintiff received was attributable to her race and gender. *Id*. at 6–9. She argues that the Magistrate Judge relies too heavily

---

making or supporting a charge of discrimination." *Id*. at 68 (quotation marks and citations omitted). The Court has thoroughly reviewed her list of purported adverse employment actions that occurred after she filed her EEOC Charge and find that they do not rise to the level of adverse employment action. To the extent that Plaintiff intends for this list to be a record of her experiences between the time she filed her EEOC Charge and her non-renewal, the Court has considered it.

on the rebuttal letters Plaintiff submitted in response to written reprimands wherein she does not allege that she was being subjected to race or sex discrimination because Plaintiff stated during her deposition that she did not have enough time to complete her rebuttals. *Id.* Further, Plaintiff contends that the specific instances complained of in the rebuttal letters were sufficient to put Defendant on notice that the letters were protected activity under Title VII. *Id.* She asserts that she made several other internal complaints sufficient to put Defendant on notice that her issues related to race and sex discrimination; specifically, Plaintiff alleges that such complaints took place at a meeting between herself and the Sheriff at Dillon Park and references deposition testimony of Sheriff Dennis and Chief Gardner in support of her argument. *Id.*

Next, Plaintiff objects to the Magistrate Judge's focus on temporal proximity as the only reason for recommending that Plaintiff's Title VII retaliation claim should fail. *Id*. at 9–14. Plaintiff contends that a genuine issue of material fact remains with respect to whether Plaintiff was terminated for the reasons stated by Defendant or because she encountered a hostile work environment, engaged in protected activity, and was retaliated against. *Id*. Plaintiff asserts that she has provided the affidavit of Latasha Reed, a black female, who states that she experienced retaliation after engaging in protected activity. *Id*. Thus, Plaintiff contends she is not just relying on her experiences to substantiate her claim for Title VII retaliation. Plaintiff further argues that a question of fact for the jury remains with respect to whether she was terminated for the reasons stated by Sheriff Dennis in his deposition or as retaliation because she has rebutted each of his purported grounds for her

termination. *Id.*

Finally, Plaintiff argues that the proximity between her protected activities and Defendant's adverse actions is not too attenuated to support a finding of causation. *Id.* at 13–14. Plaintiff contends that she is not solely relying on temporal proximity to establish causation and that the EEOC Charge is not the only protected activity in which she engaged. *Id.* Accordingly, Plaintiff argues that, viewing the facts in the light most favorable to the non-moving party, summary judgment should be denied as to this claim.

As an initial matter, the Court has already determined that Plaintiff's previous conduct, including her rebuttal letters to written reprimands, do not constitute protected activity and is unpersuaded by any additional argument made by Plaintiff in these objections. The Court notes that Plaintiff argues that her voluminous rebuttal letters are detailed enough to put Defendant on notice that she is complaining of race and sex discrimination because she detailed instances of discrimination and hostility from white male officers after she was promoted. However, upon review of her rebuttals, Plaintiff clearly complains that several employees in CID were engaging in behavior that she found problematic and the evidence in the record establishes that Plaintiff also complained of behavior of black female investigators in that unit toward her.[3]

---

[3]In her objections Plaintiff essentially argues that the facts in this case are more analogous to the facts in *Okoli v. City of Baltimore*, 648 F.3d 216 (4th Cir. 2011), and are distinguishable from the facts in *Hemphill v. United Parcel Service, Inc*., 975 F. Supp. 2d 548 (D.S.C. Sept. 27, 2013), upon which the Magistrate Judge relied. The Court disagrees. In *Okali*, the Fourth Circuit found that "[t]he City surely should have known that Okoli's complaints of 'harassment' likely encompassed sexual harassment. Indeed, Okoli's description of 'unethical,' 'degrading and dehumanizing' conduct

Turning to the Magistrate Judge's conclusion that the time between Plaintiff's protected activity and the adverse employment action is too distant to support a causal connection, the Court respectfully disagrees and finds that, considering all facts in the light most favorable to the non-moving party, Plaintiff has sufficiently established a causal connection based on temporal proximity. Plaintiff filed her EEOC Charge on May 13, 2016, and was suspended on August 8, 2016. Thus, slightly less than three months passed between the protected activity and the first adverse employment action. *See Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229 (4th Cir. 2006) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three or four months" separated the claimed protected activities and the termination of the plaintiff's employment). Accordingly, the Court determines that Plaintiff has sufficiently alleged a causal connection and established a prima facie case for retaliation under Title VII. The Court, therefore, declines to address the remainder of Plaintiff's objections regarding

_____

suggest severe misbehavior related to her identity—not a mere workplace squabble. Moreover, based on his alleged conduct, [her supervisor] himself surely would have known that Okoli was complaining of sexual harassment." *Okali*, 648 F.3d at 224. Here, there is no allegation that Sheriff Dennis engaged in any discriminatory behavior toward Plaintiff before she submitted her rebuttal letters such that he should have interpreted her complaints as raising concerns of discrimination on the basis of race and sex. Further, as stated above, Plaintiff did not merely complain of behavior from those outside of her protected classes; instead, she complained that the entire unit was treating her poorly. Instead, the Court finds the reasoning in *Hemphill* is instructive in the present action. The court in *Hemphill* determined that the plaintiff's email to her human resources manager that "contained allegations that she was 'being treated unfairly,' had been 'spoken to in a very unprofessional, disrespectful, and degrading manner,' had been 'verbally threatened about [her] job and [her] life,' and had been 'openly embarrassed and humiliated'" did not constitute protected activity because the allegations were insufficient to put the defendant on notice that her complaints were based on race discrimination. Accordingly, these objections are overruled.

causation.

Proceeding through the burden-shifting framework, it falls on Defendant to proffer a legitimate, nonretaliatory reason for the adverse employment action. Defendant contends that Plaintiff was suspended for insubordination toward the Sheriff; with respect to the non-renewal of her employment, Sheriff Dennis stated during his deposition that he lost confidence in Plaintiff. When asked to expand, the Sheriff averred that he lost confidence in her based on her refusal to assist officers with a physical altercation, and then stating afterwards "I'm a lover not a fighter;" her referring to her coworkers as lazy, corrupt, and liars; her failure to report for duty when called on during the historic flooding because her "doctor's excuse said she would report that Monday"; her repeated failure to work during the Sumter County Fair; her failure to report for duty the day after the shooting incident in September 2016; and the complaints he received about making her coworkers uncomfortable. ECF No. 36-3 at 9–13.

Because Defendant has provided a legitimate, nonretaliatory reason for the adverse action, Plaintiff bears the burden of establishing that the proffered reasons are pretextual. To establish pretext, a Title VII retaliation plaintiff must prove that her protected activity was a but-for cause of the adverse employment action by the employer. *Nassar*, 570 U.S. at 365. Here, Plaintiff asserts that she has rebutted each of these purported grounds for her termination, thus, creating a question of fact as to the actual reasoning behind her non-renewal of employment. The Court has reviewed Plaintiff's rebuttals and agrees that there exist genuine issues of material fact with respect to whether Defendant's proffered reasons

are mere pretext.  The Court specifically notes that the timing between the protected activity and the Plaintiff's non-renewal is tenuous and that Plaintiff has provided no rebuttal for her suspension; however, considering the intervening suspension, the totality of the record in this case, and the requisite standard of review for a motion for summary judgment, the Court finds that Defendant's motion for summary judgment should be denied with respect to Plaintiff's retaliation claim under Title VII.

### *Wage Discrimination*

The Magistrate Judge found that Plaintiff, by her own admission, failed to identify a particular male comparator.  ECF No. 48 at 17–18.  Accordingly, the Magistrate Judge determined that her claim under the EPA fails as a matter of law.  *Id.*  In a footnote, the Magistrate Judge noted that any Title VII claim based upon a pay differential would also fail because such a claim bears the additional burden of proving an intent to discriminate on the basis of sex.  *Id*. at 18 n. 7.  In her objections, Plaintiff asserts that she is bringing a claim under the EPA and pursuant to Title VII for wage discrimination.  ECF No. 50 at 21–22.  She appears to contend that Sergeant Dubose is a comparator and cites to a portion of his deposition where he states his annual salary.  *Id*.

Here, even taking into account Plaintiff's unclear assertion that Sergeant Dubose is a proper male comparator, Plaintiff fails to develop this claim under the EPA or Title VII any further than a restatement of her own conclusory allegations.  Accordingly, this objection is overruled.

**CONCLUSION**

Therefore, the Court adopts in part and declines to adopt in part the recommendation of the Report. Defendants' Motion for Summary Judgment [20] is **GRANTED in part** as set forth above and **DENIED in part** with respect to Plaintiff's claim for retaliation under Title VII.

IT IS SO ORDERED.

August 9, 2018                           s/Donald C. Coggins, Jr.
Spartanburg, South Carolina              United States District Judge